# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: January 21, 2026

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *     *
                                            *
AMY M. KREITHEN,                            *
                                            *
              Petitioner,                   *     No. 20-833V
                                            *
v.                                          *     Special Master Young
                                            *
SECRETARY OF HEALTH                         *
AND HUMAN SERVICES,                         *
                                            *
              Respondent.                   *
*  *  *  *  *  *  *  *  *  *  *  *  *  *     *
```

*Micheal Abraham Shiner*, Tucker Arensberg, P.C., Pittsburgh, PA, for Petitioner.
*Alexa Roggenkamp*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

On July 9, 2020, Amy Kreithen ("Petitioner") filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program").[2] Pet., ECF No. 1. Petitioner alleged that the measles, mumps, and rubella ("MMR") vaccine she received on July 10, 2017, caused her to suffer a "Non-Table injury of serious and ongoing allergic reaction[s]," including dermatitis and "anaphylaxis or other severe allergic reactions that caused anaphylaxis-like symptoms." Am. Pet. at 2,7, ECF No. 40.

After carefully analyzing and weighing of all the evidence presented in this case in accordance with the applicable legal standards,[3] I find that Petitioner has failed to provide

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted);

preponderant evidence that she suffered a vaccine-related injury for more than six months. Accordingly, the petition must be dismissed.

## I.      Procedural History

Petitioner filed her petition on July 9, 2020. Pet. Initially, Petitioner alleged that her MMR vaccination caused her to develop "Table Injury of Anaphylaxis." *Id.* at 1. On November 20, 2020, and January 4, 2021, Petitioner filed medical records. Pet'r's Exs. 1–10, ECF No. 10; Pet'r's Exs. 11–13, ECF No. 12. Petitioner filed a third set of medical records on March 1, 2021, along with a statement of completion. Pet'r's Ex. 14, ECF Nos. 14, 15.  On August 23, 2021, Petitioner filed her vaccine administration record, PAR questionnaire, and her affidavit, as well as an affidavit from Dr. Paul Williams. Pet'r's Exs. 15–18, ECF No. 20. She also filed another statement of completion. ECF No. 21.  Based on the alleged Table injury, this case was assigned to the Special Processing Unit ("SPU"). ECF No. 23. Respondent filed his Rule 4(c) report, opposing compensation, on March 21, 2022. Resp't's Rep., ECF No. 29. Specifically, Respondent argued that Petitioner failed to demonstrate that she suffered from Table anaphylaxis or that the allergic reaction that she did develop lasted for more than six months after the administration of her MMR vaccine. *Id.* at 9–12. Respondent further argued that Petitioner "failed to show that any allergic reactions she suffered after her MMR vaccination were ongoing sequelae of her mild reaction following her MMR vaccination." *Id.* at 13. Petitioner responded to Respondent's severity argument in a briefing filed on September 12, 2022. ECF No. 32. Respondent filed a response on November 10, 2022, and Petitioner replied on November 23, 2022. ECF Nos. 34, 35.

This case was transferred out of SPU and reassigned to me on November 23, 2023. ECF No. 36. In his order, the Chief Special Master noted his previous statement that "if the duration of Petitioner's injury remained a question of fact, the matter would be transferred out of the SPU and Petitioner would be permitted to retain an expert." *Id.* at 1–2. He ultimately decided that "[b]ased on the number and complexity of the issues present in this case and the need for an expert's input, [] it is appropriate to now transfer this matter out of SPU." *Id.* at 2.

I held a Rule 5 conference in this case on December 7, 2023. Min. Entry, docketed Dec. 7, 2023. In the ensuing order, I noted that "Petitioner's medical records d[id] not show that she was diagnosed with anaphylaxis following the vaccination at issue or at any other time." ECF No. 38. I further cautioned Petitioner that Respondent may object to the reasonableness of obtaining an expert in this case "without first alleging an injury supported by the medical records." *Id.* On December 16, 2024, Petitioner filed a status report detailing her intention to clarify her injury as an "immediate allergic reaction to the MMR vaccine that was administered to her in July 2017 and the onset of a serious new allergy to latex and rubber-based products which induce the onset of anaphylaxis-like symptoms." ECF No. 39 at 1. That same day, Petitioner filed an amended petition that alleged "Non-Table injuries resulting from an MMR vaccination she received on July 10, 2017." Am. Pet. at 1.

---

*see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

On February 7, 2024, I issued an order noting the Chief Special Master's order to "file any additional evidence she wished to be considered regarding the duration of her injury." ECF No. 41. Although Petitioner filed a brief, a status report, and an amended petition to address the nature of her injury, I noted that "she still ha[d] not filed evidence demonstrating that the conditions or symptoms she allegedly suffered after the resolution of her July 2017 reaction were "residual effects" or "complications" of her alleged vaccine injury pursuant to the Vaccine Act's six-month severity requirement." *Id.* at 2. I provided Petitioner "a final opportunity to file evidence she wishe[d] to be considered in support of her contention that her injury fulfills the six-month severity requirement." *Id.* While no specific type of evidence in support of causation is required for a claim to be successful, I provided some examples of the types of evidence that she may file to meet the preponderant standard:

> This evidence may include an expert report limited to the six-month issue and addressing whether there is a causal relationship between Petitioner's vaccination, or alleged vaccine reaction, and conditions or symptoms she experienced after August 3, 2017. If Petitioner files an expert report in support of a causal link, the expert should also address any alternative causes of any new allergies or subsequent reactions. Any diagnosis articulated in this report must be supported by specific citations to Petitioner's medical records rather than general citations to an entire record or Petitioner's statements alone. If Petitioner intends to continue arguing that she experienced subsequent new onset allergies or allergic reactions due to her alleged vaccine reaction, she should file any evidence she wishes to be considered, such as affidavits or medical records, to support that she suffered from new allergies and allergic symptoms post vaccination.

*Id.* Petitioner missed her March 25, 2024 deadline and was contacted via email by chambers staff. Petitioner expressed her intention to file medical literature and obtain an expert. On April 16, 2024, I extended Petitioner's deadline to May 16, 2024. ECF No. 42, I warned Petitioner that "[a] failure to comply with this Order by filing either evidence consistent with my February 7, 2024 Order or a status report confirming that she d[id] not intend to file such evidence w[ould] result in the issuance of an order to show cause why this case should not be dismissed for failure to prosecute." *Id.*

Petitioner filed a motion of extension of time on May 10, 2024. ECF No. 43. She requested 90 days "during which she w[ould] schedule the appointment and seek to obtain notarized affidavit[s] from her physicians to submit in support of her [a]mended [p]etition." *Id.* at 2. On May 17, 2024, I issued an order to show cause why Petitioner's claim should not be dismissed for failure to prosecute. ECF No. 45. Petitioner was ordered to file either "(1) any additional evidence she wishe[d] to be considered regarding the six-month severity requirement consistent with my February 7, 2024 Order, ECF No. 41, or (2) a status report confirming that she d[id] not intend to file such evidence by Monday, June 17, 2024." *Id.* The order also confirmed that a failure to meet her deadline would result in case dismissal based on a failure to prosecute.

On June 17, 2024, Petitioner filed a status report "and confirm[ed] that she d[id] not intend to file any further evidence regarding the six-month severity requirement." ECF No. 46. Respondent filed a motion to dismiss on August 9, 2024, and Petitioner responded on September

3

9, 2024. Resp't's Mot., ECF No. 47; Pet'r's Response, ECF No. 48. Respondent replied on September 20, 2024. Resp't's Reply, ECF No. 49. This matter is now ripe for adjudication.

## II.    Factual Background

### A.  Relevant Medical Records[4]

Pre vaccination, Petitioner's medical history was significant for chronic fatigue, hypothyroidism, hypopituitarism, and sulfadiazine allergy. Pet'r's Ex. 1 at 29.  An April 4, 2014 dermatology note documented a possible Neosporin allergy following treatment for a suspected spider bite and consequent skin rash. Pet'r's Ex. 10 at 3. Allergy testing conducted on November 4, 2014, showed moderate reactivity to cottage cheese, cow's milk, lobster, oysters, green beans, onions, rice, bleu cheese, flax, mustard, vanilla, and alfalfa, and Petitioner was advised to avoid eggs and beans. Pet'r's Ex. 6 at 113–16. Between January 2015 and July 2016, Petitioner was seen several times by her dermatologist for various conditions, including benign nevi, alopecia, warts, seborrheic dermatitis, and rosacea. Pet'r's Ex. 10 at 6–19. She was prescribed an albuterol inhaler on October 8, 2016, to be used as needed for wheezing or coughing. Pet'r's Ex. 4 at 9.

On July 10, 2017, Petitioner received an MMR vaccine at Walgreen's Pharmacy. Pet'r's Ex. 15. Petitioner's consent form noted allergies to sulfa and "possibly [N]eosporin." *Id.* at 2. Notes on the immunization documentation stated, "Per Merck, ok to give [Petitioner with] dermatitis allergic [reaction] to Neosporin. [Petitioner] aware of [reaction] possibility." *Id.* at 3. Later the same day, Petitioner presented to the University of Pittsburgh Medical Center ("UMPC") Shadyside emergency department ("ED") around 6:10 pm for evaluation of an allergic reaction. Pet'r's Ex. 1 at 7, 9. Dr. Terri Hepps, the admitting physician, noted that Petitioner received an MMR vaccination at approximately 3:00 pm and developed tightness in her throat and difficulty swallowing within the hour. *Id.* at 9. Petitioner reported that she received treatment, including prednisone, Zyrtec, and Pepcid, at an urgent care facility prior to reporting to the ED. *Id.* She noted no shortness of breath, chest pain, itching, or rash. *Id.* at 10. Petitioner's allergies to sulfadiazine and Neosporin were noted in the record. *Id.* Petitioner's examination was negative for facial or tongue swelling, wheezing, and stridor. *Id.* Dr. Hepps stated that Petitioner likely had "a normal allergic reaction to the MMR vaccine" and that her symptoms were appropriately treated at the urgent care facility. *Id.* Dr. Hepps advised Petitioner to continue taking antihistamines and Pepcid, provided a prescription for prednisone, and discharged her in stable condition. *Id.*

On July 11, 2017, Petitioner saw Dr. Emma McGowan at Medical Wellness Associates to follow up. Pet'r's Ex. 8 at 139. Dr. McGowan noted Petitioner's recent MMR vaccine and ED visit for tickling in the throat and numbness around the lips. *Id.* Petitioner's examination was negative for throat edema, swelling, and redness, and she had no cervical adenopathy. *Id.* Dr. McGowan stated that Petitioner had an "[a]llergic reaction to either MMR vaccine or neomycin, which is involved in making that vaccine." *Id.* Dr. McGowan advised Petitioner to begin tapering her prednisone dosage. *Id.*

Petitioner returned to the UMPC ED on July 12, 2017, complaining that her symptoms recurred following her steroid taper. Pet'r's Ex. 1 at 28. Petitioner specifically described "a sore

---

[4] Only the medical records relevant to the issue subject to this Decision are discussed.

throat without the pain," tingling in her lips, and a rash on her torso. *Id.* She denied shortness of breath, wheezing, stridor, feeling like her throat was closing or swollen, and feeling like her mouth or tongue were swollen. *Id.* On examination, Petitioner's lungs were clear, she spoke in full and complete sentences, and her oropharynx was erythematous without swelling or edema of the tongue, mouth, or lips. *Id.* at 29. The ED physician resumed Petitioner's full steroid dose. *Id.* On July 13, 2017, Petitioner again returned to the UMPC ED with complaints of a cough and dyspnea that started that day. *Id.* at 52. She noted her childhood medical history of reactive airway disease and her current wheezing. *Id.* Petitioner was given an albuterol inhalation treatment that facilitated a deep breath and was diagnosed with "mild reactive airway[] disease secondary to allergic reaction." *Id.* at 53. That same day, Petitioner presented to allergist Dr. Deborah Gentile reporting severe intermittent symptoms including hives, chest tightness, and throat tightness. Pet'r's Ex. 11 at 1. Dr. Gentile recommended continuing prednisone and H1 and H2 blockers. *Id.* at 4.

On July 18, 2017, Petitioner presented to chiropractor Noah Erickson, D.C., at Innovative Family Wellness, for a chiropractic adjustment and review of her supplements given her possible reaction to the MMR vaccine. Pet'r's Ex. 9 at 14. Dr. Erickson recommended cessation of several supplements and recommended two additional supplements. *Id.* at 14–15. Petitioner returned to Dr. Gentile on August 3, 2017, for follow-up. Pet'r's Ex. 11 at 6. Dr. Gentile noted that Petitioner's allergic symptoms began one month prior and "generally last[ed one]month." *Id.* Petitioner had been off steroids for one week, and her symptoms had resolved. *Id.* Petitioner's allergies were documented as bacitracin, bacitracin zinc, neomycin sulfate, polymyxin B, and sulfa. *Id.* at 7. Epicutaneous allergy testing done on September 26, 2017, showed allergies to butylphenol formaldehyde resin, epoxy resin, neomycin sulfate, carba mix, bacitracin, balsam of Peru, and fragrance mix. Pet'r's Ex. 7 at 22; *see also* Pet'r's Exs. 11 at 16. Dr. Gentile assessed Petitioner with unspecified contact dermatitis and counseled her on avoidance of triggers and skin care. *Id.* at 15–17.

Petitioner saw Dr. McGowan on October 23, 2017, to follow up and review her allergy panel. Pet'r's Ex. 8 at 138. Dr. McGowan diagnosed Petitioner with hypothyroidism and reactive airway disease and prescribed "Glut Spray, Lung Caps, and Zinc." *Id.* She cautioned Petitioner to avoid exposure to substances that were problematic. *Id.* Dermatology records from November 17, 2017, noted ongoing treatment for benign skin issues, rosacea, and eczema. Pet'r's Ex. 10 at 20–21. Petitioner was also cautioned to avoid scented detergents and fabric softener. *Id.*

At a January 5, 2018 dermatology visit, nearly six months post vaccination, Petitioner reported a skin lesion on her upper back that had been present for one month. Pet'r's Ex. 10 at 24. The dermatologist diagnosed an allergic reaction and recommended treatment with antihistamines or anti-inflammatory medication. *Id.* Records from a July 18, 2018 cardiology visit, noted that Petitioner reported "some allergies and rarely . . . use[d] bronchodilators." Pet's' Ex. 5 at 25.

Petitioner saw gastroenterologist Dr. Adam Slivka at the UPMC Presbyterian Digestive Disorder Center on October 10, 2018, for gastrointestinal symptoms including intermittent sharp right upper quadrant pain that was provoked by consuming food, with subsequent flatulence, belching, bloating, and intermittent diarrhea. Pet'r's Ex. 3 at 47. She also reported symptoms of nausea, early satiety, and heartburn. *Id.* She described proactively altering her diet, including eliminating dairy, leafy greens, legumes, fish, and most greasy foods. *Id.* Dr. Slivka noted a prior

medical history of Sheehan syndrome and suggested several possible causes of her symptoms, including possible irritable bowel syndrome, biliary colic, a pancreas issue, peptic ulcer disease, and adrenal insufficiency— and suggested several possible tests. *Id.* at 48. He also suggested that Petitioner begin taking Benefiber and Prilosec. *Id.*

On January 11, 2019, Petitioner's dermatologist treated her for several benign skin conditions, including keratosis, plantar wart, sebaceous hyperplasia, rosacea, and periorificial dermatitis. Pet'r's Ex. 10 at 28–29. Her dermatologist counseled that periorificial dermatitis was chronic and flare-ups could be triggered by cosmetics, topical steroids, fluorinated toothpastes, and wind and sun exposure. *Id.* at 29.

Records from a March 12, 2020 appointment with dermatology for the development of new lesions and follow-up on rosacea noted lentigines (benign pigmented lesions in sun-exposed and sun-damaged areas of the skin) and benign nevi, but did not note any treatment for rashes, dermatitis, or eczema. Pet'r's Ex. 10 at 31–32.

On March 31, 2020, Petitioner was seen via telehealth by a new provider, Nicholas Downs, D.O., and requested referral to an allergist. Pet'r's Ex. 13 at 23. On August 7, 2020, Petitioner had a telehealth appointment with allergist Dr. Sergei Belenky for seasonal allergies, medication reaction, and latex allergy. Pet'r's Ex. 11 at 18. Petitioner reported in her medical history that she suffered an anaphylactic reaction to an MMR vaccine given in September 2017. *Id.* at 19. Petitioner described how consequently, she carried an EpiPen that had been prescribed by Dr. Gentile. *Id.* Dr. Belenky ordered allergy skin testing for "major and perennial and seasonal allergens as well as food allergy screening." *Id.* Dr. Belenky also cautioned that Petitioner should take a "[c]areful vaccine approach, avoiding annual flu vaccination." *Id.* Petitioner saw Dr. Belenky in person on August 24, 2020, where she reported episodes of lip tingling or stinging with facial flushing and an occasional throat tightening sensation and expressed interest in food allergy testing. *Id.* at 21. Petitioner also reported contact dermatitis from rubber chemicals. *Id.* at 24. Dr. Belenky assessed Petitioner with a possible latex allergy, and encouraged Petitioner to avoid rubber, latex, and adhesives. *Id.* Additional testing revealed no evidence of food allergies. *Id.*

### B. Petitioner's Affidavit

Petitioner executed an affidavit on August 23, 2021. Pet'r's Ex. 18. She detailed her medical history of Sheehan syndrome, migraine, and concussion, but noted that she "did not suffer from [a]naphylaxsis and was in good health." *Id.* at ¶ 3. Petitioner also noted her "pre-existing allergy to sulfa and a local rash reaction to Neosporin." *Id.*

Within a half-hour of her July 10, 2017 MMR vaccination, Petitioner "experienced difficulty breathing, tingling in [her] face, tongue, and lips, rash and flushing on [her] face and torso, itching, swelling of [her] throat, and other symptoms consistent with [a]naphylaxsis." Pet'r's Ex. 18 at ¶ 4. Petitioner noted that her "initial diagnosis" was an allergic reaction, but she described her condition as anaphylaxis. *Id.* at ¶ 5. These symptoms briefly improved following prednisone treatment, but "worsened again," and by July 13, 2017, Petitioner was treated in the ED with "2.5 mg of aerosolized albuterol as a breathing treatment and received prescriptions for additional treatments." *Id.* at ¶ 8.

6

Petitioner noted her treatment with her allergist for allergic reactions "to multiple substances, exposure to which can cause [a]naphylaxis." Pet's' Ex. 18 at ¶ 9. She explained that "[t]o date, [she] continue[s] to suffer from recurring bouts of [a]naphylaxis and breathing problems" that she did not have pre vaccination. *Id.* at ¶ 9–10. As a result of her MMR vaccine, she is "unable to touch common items, . . . without triggering a new onset of [a]naphylaxis." *Id.* at ¶ 11. Petitioner must carry an Epi Pen and use her inhaler "for reactions and breathing problems," and she is "always at risk" for anaphylaxis. *Id.*

III.      **Parties' Contentions**

A. **Respondent**

Following Petitioner's status report confirming her intention not "to file any further evidence regarding the six-month severity requirement," Respondent filed a motion to dismiss. ECF Nos. 46, Resp't's Mot. He argued that Petitioner "cannot show by a preponderance of the evidence that she suffered the residual effects of her vaccine injury for more than six months after her vaccination." Resp't's Mot. 6–7. While conceding that Petitioner "experienced a mild, self-limited reaction following the MMR vaccine," he noted that it "was successfully treated with steroids, antihistamines, and H2 blockers shortly after the onset of symptoms." *Id.* at 7. Respondent further argued Petitioner has not provided evidence to "support a connection between her allergic reaction to the MMR vaccine and any subsequent development of allergies to various substances." *Id.*

First, Respondent noted that Petitioner had a history of "multiple allergies and sensitivities diagnosed prior to her MMR vaccination." Resp't's Mot. at 7. Respondent also noted how "none of [P]etitioner's treating physicians associated these allergies with [P]etitioner's MMR vaccination or her post-vaccination reaction." *Id.* at 8. Instead, Petitioner relied on "the statements made in her affidavit and the arguments raised in her [a]mended [p]etition and brief on severity." *Id.* The argument of Petitioner's that her need for an EpiPen satisfies the severity requirement is also contested. Respondent argued that "merely carrying an EpiPen on an as-needed basis is not a treatment for ongoing, observable sequelae." *Id.* at 9.

The legal argument that Petitioner provided as support for a six-month severity from *Silvestri* was distinguished from the facts in this case by Respondent. Unlike presently, in that case, the alleged injury, shoulder injury related to vaccine administration ("SIRVA"), has a "easily understood and communicable" sequelae. Resp't's Reply at 2 (citing *Silvestri v. Sec'y of Health & Hum. Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021)). Petitioner did not explain how "an allergic reaction to one type of stimulus led to the development of an allergic reaction to another type of stimulus." *Id.* Respondent also noted that Petitioner had not revealed "any special expertise [] that would allow her to be able to conclude that one allergic reaction caused her to develop an additional, different allergy." *Id.*

Lastly, Respondent dismissed Petitioner's argument that the proximity of her vaccination reaction to other newer allergies in her medical history is evidence that they are connected. Respondent noted that in two instances, "it is clear that [P]etitioner's allergies are listed in

alphabetical order." Resp't's Reply at 3. The third instance wherein Petitioner's allergies are listed also includes chronic allergic rhinitis. Respondent argued that "Petitioner does not allege that her chronic allergic rhinitis is related to vaccination." *Id.* at 4.

### B. Petitioner

Petitioner responded to Respondent's motion to dismiss and identified the specific allergy she was relying on to meet her six-month severity requirement:

> [P]rior to receiving the MMR vaccine, Petitioner did not suffer from a contact allergy to rubber and latex containing products. Yet soon after suffering an anaphylactic reaction to the MMR vaccine, she developed a new contact allergy to rubber and latex containing products that caused her to suffer the same anaphylactic-like symptoms that she suffered following administration of the MMR vaccine.

Pet'r's Response at 5.

Petitioner contended that she "continued to treat with physicians for both complications in the form of anaphylaxis and/or anaphylaxis-like symptoms throughout and beyond the six-month period and that her contact allergy to latex and rubber containing materials continues to this day." Pet'r's Response at 9. Although "Petitioner's medical records do not necessarily document a specific end-date to her post-vaccine related treatment or show that each visit to a medical provider entailed such treatment," Petitioner argued that the evidence of continued treatment "coupled with her testimony, is sufficient to establish the six-month severity requirement. *Id.* Close calls, Petitioner asserted, should be found in favor of Petitioner. Furthermore, dismissal would only be appropriate "following an evidentiary hearing, which include[s] expert medical testimony, and after considering both parties' post hearing briefs. *Id.* at 10. At this stage, Petitioner relied on "this entirely new allergy producing the same anaphylaxis and/or anaphylaxis-like symptoms that Petitioner first suffered in response to the MMR vaccine combined with the short time period between the vaccine administration and the development of this new allergy." *Id.*

## IV.    Discussion

Although the Vaccine Act and the Vaccine Rules contemplate case dispositive motions (*see* §300aa-12(d)(2)(C–D); Vaccine Rule 8(d)), the dismissal procedures included within the Vaccine Rules do not specifically include a mechanism for a motion to dismiss. *See* Vaccine Rule 21. Special masters have on occasion addressed the appropriateness of summarily dismissing petitions that fail to meet the Vaccine Act's "six month requirement" as set forth in § 11(c)(1)(D)(i), which states that a petitioner must establish that she "suffered the residual effects or complications of such illness, disability, injury, or condition for more than [six] months after the administration of the vaccine." § 11(c)(1)(D)(i); *See, e.g.*, *Herren v. Sec'y of Health & Hum. Servs.*, No. 13–1000V, 2014 WL 3889070 (Fed. Cl. Spec. Mstr. July 18, 2014); *Spooner v. Sec'y of Health & Hum. Servs.*, No. 13-159V, 2014 WL 504728 (Fed. Cl. Spec. Mstr. Jan. 16, 2014); *Uetz v. Sec'y of Health & Hum. Servs.*, No. 14-29V, 2014 WL 7139803 (Fed. Cl. Spec. Mstr. Nov. 21, 2014). Petitioners not asserting a vaccine-related death or other injury requiring a surgical

intervention and inpatient care must demonstrate that they suffered the residual effects or complications from their vaccine-related injury for more than six months. § 11(c)(1)(D); *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). It is the petitioner's burden to prove her case, including the six-month severity requirement, by a preponderance of the evidence. *Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). A petitioner cannot establish the length or ongoing nature of an injury solely through her own statements but rather is required to "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months." *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995), *aff'd*, 93 F.3d (Fed. Cir. 1996). Dismissal under such circumstances is not appropriate if it appears the parties reasonably contest the length of time that petitioner has suffered from the effects of her alleged vaccine injury. *See, e.g.*, *Faup v. Sec'y of Health & Hum. Servs.*, No. 12–87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015) (denying Respondent's motion for summary judgment in a case involving juvenile idiopathic arthritis; with regard to whether the six-month requirement was satisfied, the special master wrote that "one can suffer from a disease without exhibiting any clinical signs thereof").

While even mild symptoms that do not require intensive medical care may satisfy the severity requirement, ongoing medical treatment for conditions unrelated to the alleged vaccine injury do not. *Compare Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751, at *22–23 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (petitioner's post-vaccination GBS resolved within three months; subsequent ongoing medical treatment for upper respiratory and gastrointestinal infections did not satisfy six-month requirement), *with Herren*, 2014 WL 3889070, at *3 (ongoing mild GBS symptoms that did not require active medical care nevertheless satisfied severity requirement).

Here, Petitioner filed an amended petition on January 16, 2024, asserting that she "had just two pre-existing allergies to sulfa and Neosporin" before the vaccination at issue here.  Am. Pet. at 2. Petitioner continued that "within 30 minutes of administration of the MMR vaccine," she suffered from "symptoms consistent with anaphylaxis or other severe allergic reaction that caused anaphylaxis-like symptoms." *Id.* She asserted that her treater, Dr. Belenky, "expressly describe[d] Petitioner's symptoms as being related to the MMR vaccine reaction." *Id.* at 6. Petitioner concluded that "[h]er medical records directly link the subsequent contact dermatitis, which causes the same allergic reaction as the MMR administration, to the vaccination." *Id.* A review of Petitioner's cited record reveals a history notation for an "[a]naphylactic reaction to MMR in 7/17" and a "[l]atex allergy – rash, unconfirmed by IGE test done in 8/17, sensitivity of this test is low, however." *Id.* The record also noted that Petitioner had no active chronic problems. *Id.* Petitioner asserted if the medical record is interpreted in her favor, she has presented material questions of fact sufficient to overcome a motion to dismiss. Therefore, her case must be allowed to proceed and she be able to obtain experts to explain her causation theory. Respondent argued that the record contains no evidence that expressly or implicitly links her MMR reaction and her latex allergy. While there may be evidence that Petitioner could submit to establish this link, such evidence has not been presented for consideration. Indeed, Petitioner was given multiple opportunities to present "any additional evidence she wishe[d] to be considered regarding the six-month severity requirement." ECF No. 45 at 3; *see also* ECF Nos. 41–42. Furthermore, she was warned that noncompliance would result in case dismissal for failure to prosecute.

In response, Petitioner asserted that "her medical records and affidavit, which are already filed in this case, demonstrate that the six-month severity requirement has been met." ECF No. 46 at 1. She also confirmed that she "did not intend to file [additional] evidence." *Id.* In consideration of the procedural history of the case and the evidentiary record, I am treating Respondent's motion as one for summary judgment, and evaluation of its merits requires application of RCFC 56 (which is applied to Vaccine Program cases in accordance with Vaccine Rule 8). *See Bello v. Sec'y of Health & Hum. Servs.*, 158 Fed. Cl. 734, 748 (2022) ("Special masters have broad discretion to determine how best to manage the cases before them." This includes the format for taking evidence and the conduct of all proceedings "with the goal of making the proceedings expeditious, flexible, and less adversarial."); *see also Stiegler v. Sec'y of Health & Hum. Servs.*, 176 Fed. Cl. 786, 796 (2025) (citing *Bello*, 158 Fed. Cl. at 748) (holding that a special master's decision to treat a motion to dismiss as a ruling on the record was appropriate because the special master applied the proper legal standard, despite the special master referring to the motion as a motion to dismiss); *Kreizenbeck v. Sec'y of Health & Hum. Servs.*, 945 F.3d 1362, 1364 (Fed. Cir. 2020). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c) ("[a] motion for summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."); *see also Jay v. Sec'y of Health & Hum. Servs.*, 998 F.2d 979, 982–83 (Fed.Cir.1992) (motion for summary judgment should be treated the same way in vaccine cases as it is in other Court of Federal Claims cases). For purposes of summary judgment, there is no "genuine issue of material fact" when the evidence presented is insufficient to permit a reasonable finder of fact to find in favor of the non-moving party (in this case, Petitioner), and the moving party (in this case, Respondent) bears the burden of demonstrating absence of all genuine issues of material fact. *Jay*, 998 F.2d at 982–83. When ruling on a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in favor of the non-moving party. *Id.*

Petitioner argued that dismissal of her claim is only appropriate following an evidentiary hearing with expert medical testimony, while simultaneously rejecting several opportunities to provide expert evidence or medical literature in support of her contentions. However, Petitioner is required to submit preponderant evidence supporting her factual contentions that could permit a reasonable finder of fact to find in her favor. Respondent did not contest the accuracy of Petitioner's medical records. Indeed, Respondent conceded that Petitioner suffered from an allergic reaction following her MMR vaccination. Respondent characterized this reaction as mild, but Petitioner asserted in her affidavit and response to Respondent's motion that she suffered from anaphylaxis-like symptoms. Petitioner further asserted that she continued to develop new allergies and suffer from anaphylaxis-like reactions, similar to the one she first experienced following her vaccination. Again, Respondent did not contest that Petitioner continued to develop further allergies following her vaccination. Respondent argued that these reactions are not anaphylactic in nature and are characterized in the medical record as contact dermatitis. Resp't's Reply at 3 n.2. While the nature of Petitioner's allergic reactions may be relevant to any biological causation theory submitted, even assuming that they are all anaphylactic-like does not address the duration of Petitioner's vaccine-caused injury.

Respondent's motion to dismiss asserted that Petitioner is arguing that her layperson testimony is sufficient to answer a question that is medical and scientific in nature. Petitioner makes the argument that her allergic reactions are similar, so they are related. Indeed, there is evidence in the record to illustrate potential similarities among the reactions; however, there are no facts in evidence to support a relationship. Indeed, the evidence that Petitioner highlighted does not allow for any such conclusions to be drawn. Petitioner must provide preponderant evidence that she suffered residual effects or complications for more than six months after vaccine administration or January 10, 2018. Petitioner did not dispute that a medical record from August 3, 2017, details the course of her MMR reaction. "The symptoms began [one] month ago and generally last[ed one] month. The symptoms [were] reported as being moderate. The symptoms occur resolved. The context of the symptoms include[d] MMR vaccine." Pet'r's Ex. 11 at 6. The record further noted no chronic/active problems. Petitioner also reported that steroid and antihistamine treatment lead to relief, and she had been off steroids for one week as of August 3, 2017. *Id.* This record is definitive in describing the resolution of Petitioner's MMR vaccine reaction, and she did not address this directly. Instead, Petitioner asserted that she "continued to experience symptoms from both the administration of the MMR vaccine and from her new contact allergy to latex and rubber-based materials well past the six-month anniversary of the MMR vaccination on January 10, 2020." Pet'r's Response at 3–4. While this may all be true, there must be evidence that Petitioner's new allergies are scientifically or medically related to her resolved MMR vaccination reaction. Petitioner's assertions that similarity is preponderant evidence of relationship has no support in the case law that she relied on. In the *Silvestri* case, petitioner's pain was an undisputed continuation of his shoulder injury. 2021 WL 4205313. The issue was the inconsistencies between testimony and the medical record. In this case, Petitioner's alleged injury is a new allergy that is distinct from the MMR allergy yet related by some unknown mechanism. This mechanism is key to viable relationship between Petitioner's MMR reaction and any subsequent allergies. She was given multiple opportunities to submit evidence explaining this connection. However, Petitioner did not present any form of evidence, even from her treaters, that links her new allergies to her MMR reaction. Indeed, her current assertion could mean that her vaccine injury is perpetual, because any allergy with anaphylaxis-like symptoms that she develops over the course of her life could, theoretically, be linked back to her vaccination. A petitioner cannot establish the duration of her injury based on her words alone. She needs supporting evidence that can take many forms. *See* § 13(a)(1). Respondent persuasively explained how the alphabetical listing of her medical conditions is not evidence of a relationship between them. Furthermore, Petitioner described her reliance on an EpiPen but not did explain how that amounts to monitoring or active medication. Petitioner was also given an opportunity to present factual evidence in consideration of this argument, but she chose not to do so.

## V.      Conclusion

After careful review, the record does not contain preponderant evidence of a link between Petitioner's post-vaccination allergies and her MMR reaction, such that the former satisfies the injury severity requirement for the latter. Without evidence to consider, Petitioner has failed to prove by preponderant evidence that her alleged injuries or its residual effects lasted for more than six months. Accordingly, her claim must be dismissed.[5]

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.

12

**IT IS SO ORDERED.**

<u>s/Herbrina D.S. Young</u>
Herbrina D.S. Young
Special Master
